This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    No. 34,818

**ROBERT CLAUDIO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1} Defendant Robert Claudio appeals from a district court judgment and sentence filed after he entered a conditional guilty plea to escape from jail, a fourth degree felony, contrary to NMSA 1978, § 30-22-8 (1963). Defendant reserved the right to appeal the district court's denial of his motion to dismiss for a speedy trial violation. We hold that the State did not violate Defendant's right to a speedy trial, and therefore affirm.

## I.     BACKGROUND

{2} On September 27, 2013, Defendant escaped from a county jail in New Mexico. He was arrested in Utah on October 1, 2013, for the escape and other charges, and on January 9, 2014, he was transported from Utah to New Mexico following the issuance of a governor's warrant for extradition to face these charges. On January 16, 2014, the Law Offices of the Public Defender (LOPD) filed a notice indicating that it would be arranging for contract counsel, John Bowlin, to represent Defendant in this case—Bowlin was the first of three attorneys assigned to represent Defendant. On January 27, 2014, Defendant was indicted for possession of a deadly weapon or explosive by a prisoner, conspiracy to commit escape from jail, and escape or attempt to escape from jail.

{3} On February 3, 2014, Bowlin filed a waiver of arraignment and entered a not guilty plea on behalf of Defendant. The district court scheduled a pretrial conference

2

for May 8, 2014, a docket call for July 7, 2014, jury selection for July 14, 2014, and the jury trial for July 15, 2014. Defendant appeared at the pretrial conference with Bowlin, at which time counsel indicated that he was researching the possibility of filing some motions, but otherwise, he would be ready for trial. Therefore, the district court entered an order maintaining the same dates for the docket call, jury selection, and jury trial.

{4} On June 18, 2014, the district court issued a memorandum vacating the docket call set for July 7, 2014, due to an upgrade in the building's HVAC system. The memorandum stated that jury selections set for July 14, 2014, and jury trials set for July 15-18, 2014, would remain set on the court's docket and would proceed accordingly.

{5} On July 11, 2014, four days before trial, the LOPD filed a notice indicating that it would be arranging for contract counsel, Daniel M. Salazar (Salazar), to represent Defendant in this case. The record reflects that Bowlin was no longer handling cases. On July 14, 2014, the day of jury selection, Salazar appeared telephonically and advised the district court that he had spoken to Defendant by telephone. He would be entering his appearance on behalf of Defendant and he would be seeking a continuance. Defendant interjected and stated that he had an issue. The district court ordered a short recess to allow Defendant to speak with Salazar and following the

recess, Salazar asked for a continuance. The State indicated that it had no objection to the continuance as long as the time counted against Defendant for speedy trial purposes. Defendant, however, personally asserted that he was not waiving his right to a speedy trial. The district court continued the case and scheduled a docket call for November 3, 2014, jury selection for November 10, 2014, and the jury trial for November 14, 2014.

{6}    On November 3, 2014, the docket call was held; Defendant was present with counsel Salazar; Salazar indicated that he had a scheduled vacation on the trial date, but the parties were close to reaching a plea agreement; the State announced that it was ready for trial and indicated that it would oppose any continuance; Salazar advised the court that he was obligated to argue for a speedy trial per Defendant's request; the district court granted a recess to allow Salazar to communicate with Defendant about a possible plea; following the recess, Salazar announced that the parties had reached a plea agreement and asked that the case be set for a plea hearing; and the State asserted on the record that the time should count against Defendant for speedy trial purposes.

{7}    Prior to the January 5, 2015 plea hearing, Salazar informed the district court and the State that he had been in a jury trial in Albuquerque at the end of 2014. The jury did not complete its deliberations and the district court recessed the jury for New

Year's Eve and ordered the jury members to return to resume deliberations on January 5, 2015. Salazar requested but was denied permission from the district court in Albuquerque to attend the plea hearing in this case. As a result, the plea hearing was vacated and Defendant was not transported from the county jail. Later in the day, Defendant filed a pro se motion seeking to terminate Salazar as his court-appointed attorney and a petition for habeas corpus.

{8}     On February 3, 2015, the district court held a hearing to consider Defendant's motion to terminate counsel. Defendant testified that he tried to reach Salazar multiple times and did not receive a response. He also testified that he informed Salazar that he was not interested in entering into a plea agreement from the beginning and he claimed that he was suffering in the county jail. Nonetheless, during this hearing, Defendant admitted that he had negotiated a plea with the State, but he claimed that it was subsequently voided when Salazar did not appear for the plea hearing. Defendant asked the court for another attorney. Salazar informed the court that he was the attorney of last resort. The judge noted that Defendant's case was originally assigned to Bowlin due to a conflict with the LOPD's office, then the case was assigned to Salazar, and by terminating Salazar, Defendant's case would be delayed further because it would take some time to screen his case to make sure that another attorney did not have a conflict. The district court granted Defendant's motion to

5

terminate Salazar and sent an email to the Director of Contract Counsel Legal Services, to find another attorney to represent Defendant. At that time, the district court scheduled a docket call in this case for June 1, 2015, jury selection for June 8, 2015, and the jury trial for June 9, 2015.

**{9}** On February 4, 2015, the LOPD filed a notice indicating that it would be arranging for contract counsel, Mickie Patterson, to represent Defendant in this case. Subsequently, on May 7, 2015, Defendant filed a motion to dismiss for a violation of his right to a speedy trial in this case. The district court held a hearing on this motion to dismiss on June 1, 2015, and entered its decision and order on June 8, 2015, finding that the State did not violate Defendant's right to a speedy trial and denying Defendant's motion to dismiss based on speedy trial grounds.

**{10}** Also on June 8, 2015, Defendant entered into a conditional plea agreement with the State reserving his right to appeal the district court's denial of his motion to dismiss based on speedy trial grounds. On appeal, Defendant argues that the twenty month delay between his arrest and the date of the scheduled jury trial violated his right to a speedy trial.

**II.    DISCUSSION**

**{11}** "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387 (stating that the Sixth

Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides defendants with the right to a speedy trial). In *Garza*, our Supreme Court adopted the balancing test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), which sets forth four factors to be considered when determining whether a defendant's right to a speedy trial was violated: "(1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case. No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted).

{12}    In considering each of the *Barker* factors, we defer to the district court's factual findings. *State v. Parrish*, 2011-NMCA-033, ¶ 10, 149 N.M. 506, 252 P.3d 730. However, we review de novo the question of whether Defendant's constitutional right to a speedy trial was violated. *See id.* Accordingly, we give deference to, and rely on, the district court's findings discussed in its decision and order.

**A.    Length of Delay**

{13}     Initially, we consider the length of delay, which serves a dual role. *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. "First, it is a threshold inquiry that triggers the rest of the analysis, and second, it is considered as part of the balancing test itself." *Id.* The district court determined, and the parties agree, that this is a simple case; twenty months elapsed from the date of Defendant's arrest to the date of the last scheduled jury trial; and a delay of twenty months is presumptively prejudicial in simple cases, thus triggering a need to consider all of the *Barker* factors. *See State v. Manzanares*, 1996-NMSC-028, ¶ 9, 121 N.M. 798, 918 P.2d 714 ("The question of the complexity of a case is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities."); *see also Garza*, 2009-NMSC-038, ¶¶ 2, 48 (stating that "the length of delay necessary to trigger the speedy trial inquiry [is] twelve months for simple cases"); *State v. Urban*, 2004-NMSC-007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 ("In general, the right [to a speedy trial] attaches when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." (internal quotation marks and citation omitted)).

{14}     "[T]he greater the delay the more heavily it will potentially weigh against the [s]tate." *Garza*, 2009-NMSC-038, ¶ 24. In this case, the district court determined that

8

the twenty-month delay weighed slightly against the State. We conclude that a delay of eight months beyond the presumptively prejudicial threshold of twelve months in a simple case weighs slightly against the State and in Defendant's favor. *See State v. Taylor*, 2015-NMCA-012, ¶¶ 7, 9, 343 P.3d 199 (holding that an almost twenty-four month delay, which was twelve months beyond the date of presumptive prejudice in a simple case, weighed heavily against the state); *State v. Wilson*, 2010-NMCA-018, ¶¶ 25, 29, 147 N.M. 706, 228 P.3d 490 (holding that a delay of just over five months beyond the applicable guideline, which was nine months at the time for a simple case, was not so extraordinary or protracted as to compel weighing the length of delay factor against the state more than slightly); *State v. Valencia*, 2010-NMCA-005, ¶¶ 14, 16, 147 N.M. 432, 224 P.3d 659 (holding that a delay of three months beyond the triggering date in a simple case weighed only slightly against the state). *But see State v. Steinmetz*, 2014-NMCA-070, ¶ 6, 327 P.3d 1145 (holding that a delay of twenty-eight months beyond the triggering date in an intermediate case weighed moderately against the state); *State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (holding that a delay of six months beyond the triggering date in an intermediate case weighed only slightly against the state).

**B.    Reason for the Delay**

{15}    "We previously have recognized three types of delay that may be attributed to the [s]tate and weighted against it at varying levels." *State v. Serros*, 2016-NMSC-008, ¶ 29, 366 P.3d 1121. First, "a deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." *Garza*, 2009-NMSC-038, ¶ 25 (alteration, internal quotation marks, and citation omitted). The second type is "negligent or administrative delay," which "should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* ¶ 26 (internal quotation marks and citation omitted). "As the length of delay increases, negligent or administrative delay weighs more heavily against the [s]tate." *Serros*, 2016-NMSC-008, ¶ 29. The third type of delay is "appropriate delay, justified for a valid reason, such as a missing witness, [and] is neutral and does not weigh against the [s]tate." *Id.* (internal quotation marks and citation omitted). In *Serros*, our Supreme Court discussed a fourth type of delay recognized by the United States Supreme Court—"delay caused by the defense, which weighs against the defendant." *Id.* (internal quotation marks and citation omitted).

{16}    The district court separated the twenty month delay into five distinct time periods. It weighed the first time period, from October 1, 2013 to January 9, 2014, against Defendant "because of the flight to Utah." Defendant argues that this was error

10

because he waived extradition and the State failed to bring him back to New Mexico from Utah in a timely manner. Contrary to Defendant's assertion, the district court found that Defendant was returned to New Mexico pursuant to a governor's warrant for extradition, not a waiver of extradition. Because the State could not begin to prosecute this case until Defendant was returned to New Mexico, we agree with the district court that this delay should weigh against Defendant. *See id.*; *State v. Harvey*, 1973-NMCA-080, ¶ 7, 85 N.M. 214, 510 P.2d 1085 ("[D]elay occasioned by the accused will weigh heavily against him.").

{17}   Second, the district court weighed the time period following Defendant's return to New Mexico, from January 10 to July 10, 2014, neutrally "because the case was progressing appropriately." However, Defendant argues that "the State"—"referring to both the Ninth Judicial District Attorney's Office and the Ninth Judicial District Public Defender's Office"—"failed to honor [its] obligation [to] timely appoint[] new court-appointed [c]ounsel once [Bowlin's] contract expired three months prior to the trial that was scheduled [for] July 15, 2014." According to Defendant, the public defender's office is "an arm of the State." In support of this argument, Defendant cites to NMSA 1978, Section 31-15-4 (2013) (describing the chief public defender; appointment; qualification; removal), NMSA 1978, Section 31-1-5 (1973) (describing

11

the procedures on arrests; reports), and NMSA 1978, Section 31-15-5.1 (2013) (describing the public defender automation fund created; administration; distribution).

**{18}** We are not convinced that these statutes support Defendant's argument. Moreover, to the extent that Defendant intended to cite to NMSA 1978, Section 31-15-5 (2013) (describing the public defender department; administration; finance) instead of Section 31-1-5, we are also not persuaded. *See Serros*, 2016-NMSC-008, ¶ 97 ("[I]t is uniquely the duty of the prosecution—as the [s]tate's representative—to ensure that the accused is prosecuted in a manner consistent with the Constitution."). Thus, we conclude that, between January 10 to July 10, 2014, the case moved "toward trial with customary promptness" and this time should be weighed "neutrally between the parties." *Wilson*, 2010-NMCA-018, ¶ 34 (internal quotation marks and citation omitted).

**{19}** Third, the district court weighed the time period from July 11 to November 3, 2014, against Defendant because "[t]his time delay was actually to his benefit to have his attorney adequately prepared for trial." This delay occurred because Defendant's first attorney, Bowlin, was no longer handling cases, and the case was reassigned to Defendant's second attorney, Salazar, days before trial. Defendant argued below that this time, as well as the remainder of the time, should weigh against the State because "the State is the creator of the Public Defender Department" and he alleged that the

12

public defender contract attorneys were overworked. On appeal, he asserts that this delay and the remainder of the delay was due to negligent or administrative delay on the part of the State, which he maintains includes the court and the public defender's office. *See Stock*, 2006-NMCA-140, ¶ 26 (noting that "the district court blamed the delay on the fact that the public defenders' office was severely overburdened" and recognizing that "[t]o the extent that delays can be blamed on the overburdened system, that . . . cannot be held against [the d]efendant").

{20} The district court granted this continuance to allow counsel adequate time to prepare for trial. *See Garza*, 2009-NMSC-038, ¶ 11 (recognizing that, although "speed is an important attribute of the right, if either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed [and w]e cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate" (alteration, internal quotation marks, and citations omitted)). Because this continuance was for Defendant's benefit, we will not weigh it against the State. *See Stock*, 2006-NMCA-140, ¶ 19 (acknowledging that generally, "to the extent delays are for a defendant's benefit, it would not be fair to hold them against the state"); *see also State v. Fierro*, 2012-NMCA-054, ¶ 62, 278 P.3d 541 ("declin[ing] to hold that the district court violated [the d]efendant's speedy trial rights when, in the interest of ensuring that [the d]efendant was given every opportunity to obtain the counsel of his

choice and ensuring that his chosen counsel had adequate time to prepare for trial, the court granted [the d]efendant significant leeway and every opportunity to prepare an adequate defense").

{21} The district court weighed the fourth time period, November 3, 2014 to February 3, 2015, against Defendant and reasoned that this time period started on the date that Defendant announced that the parties had reached a plea agreement and requested a plea hearing, and it extended through the date that Defendant announced that he would no longer be accepting the plea agreement. The fifth and final period, February 4 to June 8, 2015, was weighed neutrally, because the district court determined that "the case [was] progressing properly." Defendant claims that these time periods should weigh against the State because the State—either through the court or the public defender's office—caused the negligent or administrative delay. We are not persuaded.

{22} We agree with the district court that the delay in this case following Defendant's agreement to the plea offer until he announced that he would no longer accept the plea agreement should be weighed against Defendant. *See State v. Maddox*, 2008-NMSC-062, ¶ 24, 145 N.M. 242, 195 P.3d 1254 ("Generally, there is no rule attributing delay resulting from attempted plea negotiations to a specific party and absent some act of bad faith or some prejudice to the defendant, plea negotiations are

14

themselves not a factor to be held against either party." (internal quotation marks and citation omitted)), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48; *see also State v. Eskridge*, 1997-NMCA-106, ¶ 15, 124 N.M. 227, 947 P.2d 502 (holding that delay caused by the defendant's agreement, through his attorney, to a plea offer weighed against the defendant). *But see State v. Lujan*, 1991-NMCA-067, ¶ 14, 112 N.M. 346, 815 P.2d 642 (holding that delay caused by the state in responding to the defendant's plea proposals weighed against the state). We further agree that the fifth time period should be weighed neutrally because during this time period, the case was proceeding forward with Defendant's third attorney. *See Wilson*, 2010-NMCA-018, ¶ 34 (recognizing that time periods in which a case is moving "toward trial with customary promptness" should be weighed "neutrally between the parties" (internal quotation marks and citation omitted)). In sum, we conclude that none of the delay was attributable to the State.

**C.     Assertion of the Right**

{23}     "Generally, we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "Thus, we accord weight to the frequency and force of the defendant's objections to the delay." *Id.* (internal quotation marks and citation omitted). "We also analyze the defendant's actions with regard to the delay." *Id.*

{24} The district court found that Defendant "mentioned his speedy trial rights" at the July 14, 2014 hearing, but Defendant did not forcefully assert his right to a speedy trial until he filed his motion to dismiss in May 2015. The district court also found that to the extent that Defendant alleged that he asserted his right to a speedy trial early by filing a pleading in Utah indicating such, this pleading was not in the record. The district court weighed this factor slightly against the State.

{25} On appeal, Defendant asserts that he "submitted motions and letters to the [c]ourt, *pro se*, indicating his opposition to any continuances being granted and asserting his right to a speedy trial." He acknowledges that "[n]one of the pleadings [that he] submitted . . . were filed of record[,] so it is assumed that they were not reviewed by the [d]istrict [c]ourt [j]udge." *See In re Aaron L.*, 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431 ("This Court will not consider and counsel should not refer to matters not of record in their briefs.").

{26} Based on our review of the record, on July 14, 2014, Defendant personally asserted that he was not waiving his right to a speedy trial. On November 3, 2014, attorney Salazar advised the district court that he was obligated to argue for a speedy trial per Defendant's request. Defendant then asserted his right in his motion to dismiss on May 7, 2015. While Defendant did not aggressively assert his right to a speedy trial, he did not acquiesce in the delay. *See State v. Spearman*, 2012-NMSC-

16

023, ¶ 33, 283 P.3d 272. Therefore, we weigh this factor slightly against the State as well. *See Urban*, 2004-NMSC-007, ¶ 16 (holding that on the whole, the defendant timely asserted his right to a speedy trial three times, and concluding that this factor weighs against the state).

**D.     Prejudice to Defendant**

{27}     "The United States Supreme Court has identified three interests that the right to a speedy trial protects: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Spearman*, 2012-NMSC-023, ¶ 34 (internal quotation marks and citation omitted). "Defendant has the burden to demonstrate and substantiate prejudice." *Wilson*, 2010-NMCA-018, ¶ 47. "We weigh the first two interests in the defendant's favor only where the incarceration or the anxiety suffered is undue." *Id.*; *see also Garza*, 2009-NMSC-038, ¶ 35 ("As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial." (alterations, internal quotation marks, and citation omitted)).

{28}     With respect to the first factor, Defendant was incarcerated for twenty months for the charges in this case, from the date of his arrest on October 1, 2013, through the date of his sentencing hearing on June 8, 2015. *See Garza*, 2009-NMSC-038, ¶ 35

17

("The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration."). The record reflects that Defendant acknowledged that, in addition to being held for the charges in this case, he was also being held for extradition to Colorado. Therefore, the district court concluded that Defendant was not subjected to oppressive pretrial incarceration as a result of the delay in this case. We agree, and hold that Defendant has not demonstrated any prejudicial effects as a result of his incarceration.

{29}     With respect to the second factor, Defendant alleged that he was treated poorly in the county jail and that he suffered anxiety and health concerns. However, there was no evidence presented to support these allegations. On appeal, Defendant asserts that the delay in this case was so significant that "there is no need for proof . . . of actual prejudice." *See Work v. State*, 1990-NMSC-085, ¶ 12, 111 N.M. 145, 803 P.2d 234 ("On the question of prejudice, the delay may be so lengthy that the presumption of prejudice becomes well-nigh conclusive and proof of actual prejudice is unnecessary."), *modified by Garza*, 2009-NMSC-038, ¶ 17. Additionally, Defendant argues that "anxiety and concern can be inferred by the sole fact that criminal charges are filed[,]" and the twenty month delay was an unacceptably long period of time for him to suffer anxiety and concern as a result of the charges against him. We are not

persuaded. "[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers." *Garza*, 2009-NMSC-038, ¶ 35; *Wilson*, 2010-NMCA-018, ¶ 48 (recognizing that "[s]ome degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial[,]" and holding that the defendant "made no particularized showing to substantiate prejudice from undue pretrial incarceration or undue anxiety").

**{30}** With respect to the third factor, which is the "most serious[,]" *see Garza*, 2009-NMSC-038, ¶ 36 (internal quotation marks and citation omitted), Defendant failed to assert that his defense was impaired as a result of the delay in this case.

**{31}** Based on the foregoing, we hold that Defendant was not prejudiced to a degree sufficient to weigh this factor in his favor. *See id.* ¶ 37 ("[S]ome non-particularized prejudice is not the type of prejudice against which the speedy trial right protects." (alteration, internal quotation marks, and citation omitted)).

**E.    Balancing the Four Factors**

**{32}** We hold that the approximate eight month delay beyond the presumptive twelve month period weighs slightly against the State; none of the delay was attributable to the State; Defendant's assertion of his right to a speedy trial right was not particularly vigorous, so this factor weighs slightly against the State; and Defendant has not shown

19

particularized prejudice. "Under these circumstances, we reject [the d]efendant's assertion that his right to a speedy trial was violated." *Fierro*, 2012-NMCA-054, ¶ 61; *see Garza,* 2009-NMSC-038, ¶ 40 (concluding that, because the defendant failed to show prejudice, and the remaining factors did not weigh heavily in his favor, the defendant's right to a speedy trial was not violated).

## III.    CONCLUSION

{33}    For the foregoing reasons, we affirm.

{34}    **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Chief Judge**

_____
**STEPHEN G. FRENCH, Judge**