This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                            **NO. 31,565**

**MARK SERROS,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Robert M. Schwartz, District Judge**

Gary K. King, Attorney General
Santa Fe, New Mexico
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, New Mexico

for Appellant

Jorge A. Alvarado, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, New Mexico

for Appellee

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     The State appeals the district court's order dismissing the case against Defendant Mark Serros on speedy trial grounds. The district court ordered that all charges against Defendant be dismissed with prejudice because it found that one of Defendant's attorneys had committed ineffective assistance of counsel. We reverse.

**BACKGROUND**

{2}     On March 26, 2007, Defendant was charged with criminal sexual penetration of a minor, bribery of a witness, and contributing to the delinquency of a minor relating to the alleged sexual abuse of Defendant's four-year-old nephew (Victim). He was arraigned on April 2, 2007, and attorney Houston Ross entered an appearance on his behalf and made a speedy trial demand on May 10, 2007.

{3}     On September 14, 2007, the State filed the first stipulated Rule 5-604 NMRA petition to extend the time to commence trial from September 24, 2007, to January 2, 2008, because it was waiting for DNA results from Defendant's vehicle. The State filed a second Rule 5-604 petition on December 12, 2007, to extend the time to commence trial to April 2, 2008, because the State was preparing a plea offer and, although some DNA processing had taken place, it had not been completed. The district court granted the extension and set the jury trial for March 24, 2008. After a pretrial conference in February 2008, however, the district court continued the trial on the grounds that defense counsel requested a sex offender evaluation and because new

2

evidence from the recent safehouse interview had been disclosed. The court did not provide a new trial date at that time.

{4} Shortly thereafter, upon the retirement of then-presiding Judge Macaron, the case was reassigned to Judge Schwartz. The State filed a third stipulated Rule 5-604 petition to extend the time to commence trial, noting that defense counsel was still considering whether to seek a sex offender evaluation of Defendant. The petition also stated that a second safehouse interview was conducted after Victim had allegedly made a contradictory disclosure. Our Supreme Court granted an extension to September 2, 2008, and the district court set the jury trial for August 25, 2008.

{5} On August 18, 2008, the State filed a fourth stipulated Rule 5-604 petition for a six-month rule extension. In the petition, the parties characterized the case as "complicated because of the age of the alleged [V]ictim, and his relationship to [Defendant,]" and the petition further stated that the State had made a plea offer to Defendant's counsel that had not yet been accepted. On August 25, 2008, our Supreme Court granted an extension to March 2, 2009. Just prior to the Supreme Court's order, the State filed a stipulated motion to continue the August trial date, noting that the parties were engaged in plea negotiations.

{6} In November 2008, Defendant filed a disciplinary complaint against Mr. Ross and thereafter filed a pro se motion for appointment of substitute counsel, asserting

that Mr. Ross was not able to adequately represent his interests. At a hearing on the matter, Defendant advised the district court that he no longer wanted Mr. Ross to represent him. The court entered an order on December 5, 2008, in which it found that "while there is no indication that [Mr. Ross] has not fully and effectively represented [D]efendant, it is in the interest of justice to appoint new counsel in view of [D]efendant's . . . unwillingness to work with [Mr. Ross]." The court further ordered that any delay caused by the change of counsel would be charged against Defendant for speedy trial purposes. The jury trial was then set for February 9, 2009.

{7}     On January 23, 2009, Scott Pistone took over Defendant's representation and on the same day, filed a speedy trial demand. On February 16, 2009, the State filed a fifth stipulated Rule 5-604 petition to extend the time to commence trial to September 2, 2009. The petition stated that Mr. Pistone was not ready for trial given his newness to the case and was unavailable due to the illness and death of his father. It also noted that Mr. Pistone had left a voice message for the deputy district attorney advising her that he had just received the discovery, which consisted of approximately 800 pages, as well as the safehouse tape. Further, the petition stated that the State had made a plea offer to previous counsel, many of the witness interviews were completed by prior counsel, and the case was complicated. Shortly thereafter, our Supreme Court granted the petition.

**{8}** On July 10, 2009, the district court stayed the proceedings pending a determination of Defendant's competency. Specifically, the order provided that the court had "considered information from both counsel and finds that there is evidence that [D]efendant may not be competent to proceed in this case."

**{9}** Six months later, on January 4, 2010, Mr. Pistone moved to withdraw as Defendant's counsel. In his unopposed motion, Mr. Pistone stated that Defendant had filed a bar complaint against him, Defendant was filing his own motions, Defendant was not complying with Mr. Pistone, and the attorney-client relationship had deteriorated. The district court scheduled a hearing on the motion and on March 24, 2010, heard argument from the parties. Mr. Pistone told the court that he and the deputy district attorney had met a couple of times to go over the State's case and planned to go forward. However, because Defendant had filed a bar complaint against him, Mr. Pistone stated that he believed Defendant "would do better with an attorney who would be more in line with what he would like to see done." The deputy district attorney advised the court that the previous attorney, Mr. Ross, had withdrawn for the same kinds of reasons. The district court granted the motion to withdraw and told Defendant, who was present at the hearing, "let me advise you that the next attorney you get, you're stuck with. I'm not going to play this game with you, so that's the way it's going to be. Your next attorney, whether you like him or her, ain't gonna matter."

**{10}**     Liane Kerr entered her appearance on behalf of Defendant on May 19, 2010, and made a demand for a speedy trial. On October 18, 2010, Defendant filed a motion to dismiss on speedy trial grounds due to ineffective assistance of counsel. Defendant argued that the three-and-one-half-year length of delay was excessive and that his "due process rights have been compromised by his court-appointed attorneys." He thus requested an evidentiary hearing to determine whether he received ineffective assistance of counsel. On the same date, the district court lifted the stay of proceedings based on Ms. Kerr's representation that the competency evaluation had been completed and there were no competency issues.

**{11}**     The district court set a hearing on Defendant's motion to dismiss for December 16, 2010. However, because Ms. Kerr was recovering from surgery, the parties filed a stipulated motion for continuance, and the hearing was reset for March 23, 2011. On that date, the court heard testimony from several witnesses. Thereafter, the district court continued the hearing on April 15, 2011, May 24, 2011, and June 23, 2011.

**{12}**     After the June 23, 2011 hearing, the court released Defendant on his own recognizance. In addition, the district court dismissed all charges against Defendant with prejudice, finding that Defendant's constitutional right to a speedy trial was violated as a result of ineffective assistance of counsel. The district court found that the State was not at fault for any of the delay and stated that "[D]efendant's own prior

counsel are responsible for the delay in this case." Specifically, the court noted that it did "not find ineffective assistance of counsel as to Mr. Ross," but that it did find "that Mr. Pistone committed ineffective assistance of counsel in his representation of [Defendant]." The court also found that Defendant suffered "extreme prejudice" as a result of the delay and that Defendant asserted his right to a speedy trial to his defense attorneys, even though he never asserted that right to the State or the court. Finally, the court concluded that "[t]he length of delay is almost four and one[-]half . . . years, which resulted in a denial of due process." We discuss the district court's order in further detail in the discussion section of this Opinion.

**DISCUSSION**

**Standard of Review**

{13} The State argues that the district court erred in finding that Defendant's constitutional right to a speedy trial was violated by the delay in this case. We evaluate speedy trial claims by balancing the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant." *State v. Garza*, 2009-NMSC-038, ¶ 13, 146 N.M. 499, 212 P.3d 387 (internal quotation marks and citation omitted). "These four factors are interrelated and must be evaluated in light of other relevant circumstances in the particular case.

No one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *State v. Johnson*, 2007-NMCA-107, ¶ 5, 142 N.M. 377, 165 P.3d 1153 (internal quotation marks and citation omitted). On appeal, however, we give deference to the district court's factual findings, but we then "independently evaluate the four *Barker* factors to ensure that the constitutional right has not been violated." *Johnson*, 2007-NMCA-107, ¶ 5.

**Length of Delay**

{14} On appeal, we consider the length of delay as both "a threshold inquiry that triggers the rest of the analysis" and "as part of the balancing test itself." *State v. Stock*, 2006-NMCA-140, ¶ 13, 140 N.M. 676, 147 P.3d 885. In determining the weight to be given to the length of delay, we consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* (internal quotation marks and citation omitted).

{15} The State concedes that the length of delay in this case was sufficient to trigger further inquiry and analysis of all the factors. Although the district court did not make any finding that this case was of intermediate complexity as argued by Defendant or highly complex as argued by the State, the time between Defendant's initial arrest on March 9, 2007, to the filing of his motion to dismiss on speedy trial grounds on October 18, 2010, was approximately forty-three months. The district court did not

order Defendant released from custody until June 23, 2011, bringing his total time in custody to fifty-one and one-half months. That period of delay exceeds both the fifteen-month or eighteen-month thresholds, regardless of whether a case is intermediate or complex, thus triggering further inquiry. *See Garza*, 2009-NMSC-038, ¶ 48. Accordingly, Defendant's trial delay was presumptively prejudicial.

**{16}** However, as we have noted above, the length of delay alone is not dispositive, and our conclusion that Defendant's delay was presumptively prejudicial does not end the inquiry into whether his speedy trial rights were violated. Instead, we must consider the length of the delay as one of the four *Barker* factors in the analysis, none of which alone is sufficient to find a violation of the right. *Garza*, 2009-NMSC-038, ¶ 23. The question here is determining how heavily—if at all—to weigh the delay against the State.

**{17}** The district court found that the State was not at fault for any of the delay and weighed the length of delay entirely against Defendant based on the conduct of his prior counsel. We recognize that in *Garza*, our Supreme Court stated that "the greater the delay the more heavily it will potentially weigh against the State." *Id.* ¶ 24. However, given the district court's findings, we cannot say that the length of the delay in this case weighs even slightly against the State. At the very least, we weigh this factor slightly against Defendant.

9

**Reasons for Delay**

{18}    We next consider "[t]he reasons for a period of the delay [that] may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). We examine this second *Barker* factor by "allocating the reasons for the delay to each side and determining the weight attributable to each reason." *State v. Tortolito*, 1997-NMCA-128, ¶ 8, 124 N.M. 368, 950 P.2d 811. There are three types of delay, each of which carries a different weight. *Garza*, 2009-NMSC-038, ¶ 25. First, prosecutorial "'bad faith in causing delay will be weighed heavily against the government[.]'" *Id.* (quoting *Doggett v. United States*, 505 U.S. 647, 656 (1992)). Second, delay due to the prosecutor's negligence, or to administrative delay weighs less heavily against the government. *Id.* ¶ 26. Finally, "'a valid reason, such as a missing witness, should serve to justify appropriate delay.'" *Id.* ¶ 27 (quoting *Barker*, 407 U.S. at 531). In addition to the three types of delay set forth above, delay caused by the defendant or defense counsel generally weighs against the defendant. *Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) ("Because the attorney is the defendant's agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also

10

charged against the defendant." (alteration, internal quotation marks, and citation omitted)).

{19} In this case, the district court found no intentional delay by the State. The court explicitly stated that it "did not find any behavior by the State that it intended to delay the case or interfere with [D]efendant's right to a speedy trial." The court further found that the State acted reasonably and reiterated that it did "not find any fault with the State." We do not quarrel with the district court's findings and note that even Defendant's motion to dismiss did not allege that any of the delay was occasioned by the State but instead argued only that his due process rights had "been compromised by his court-appointed attorneys." Therefore, the reasons for the delay—except for a short three-month period as discussed below—do not weigh against the State. We thus turn to examine whether the delay was attributable to Defendant or his counsel.

{20} Defendant was appointed three attorneys over the span of the case—Houston Ross, Scott Pistone, and Liane Kerr. Mr. Ross represented Defendant from May 10, 2007, until December 5, 2008, when the district court granted Defendant's pro se motion for new counsel. Mr. Pistone entered his appearance as Defendant's counsel on January 23, 2009. His motion to withdraw, filed on January 4, 2010, was granted on March 24, 2010. Ms. Kerr subsequently entered her appearance on May 19, 2010, and remained Defendant's counsel through at least July 20, 2011, when the district

11

court entered its order of dismissal. Referring to Mr. Ross and Mr. Pistone, the district court found that Defendant's "own prior counsel are responsible for the delay in this case." The court did not find ineffective assistance of counsel as to Mr. Ross; however, it found that "Mr. Pistone committed ineffective assistance of counsel in his representation of [Defendant]." We examine each of these periods of representation and disagree with the district court's conclusion that Mr. Pistone committed ineffective assistance of counsel sufficient to cause a speedy trial violation in this case or that any speedy trial violation occurred.

**Houston Ross**

{21}     With regard to the period from May 2007 to December 2008, when Mr. Ross represented Defendant, the district court found that "Mr. Ross engaged in plea negotiations with the State, investigated the feasibility of a sex offender evaluation to assist in plea negotiations, and conducted a number of pre-trial interviews with the State's witnesses." During this period, the State filed four of the five Rule 5-604 petitions for a six-month rule extension. Defendant either expressly consented to or did not object to any of the extensions. After our Supreme Court granted the fourth extension of time, the trial was scheduled for December 1, 2008. At that time, and as Defendant was aware, the State was prepared for trial and ready to proceed. In the interim, however, Defendant filed a pro se motion for appointment of substitute

counsel. Although the district court granted Defendant's motion on December 5, 2008, it found that there was "no indication that [Mr. Ross] has not fully and effectively represented [D]efendant." The district court also ordered that any delay caused by the change of counsel would be charged against Defendant for speedy trial purposes.

{22} We conclude that Defendant caused or contributed to the delay throughout this period. He caused delay by either not objecting to or by stipulating to all of the six-month extensions that finally resulted in the trial being set for December 2008. Defendant also caused delay when he filed a motion to change counsel at a crucial time that resulted in the cancellation of the December 2008 trial date and further continuances. "[D]elay occasioned by the accused will weigh heavily against him." *State v. Harvey*, 1973-NMCA-080, ¶ 7, 85 N.M. 214, 510 P.2d 1085. We conclude a total of one year and seven months of delay is attributable to Defendant. This delay weighs heavily against him.

**Scott Pistone**

{23} Shortly after the district court entered its order granting Defendant's pro se motion for new counsel, the court set a new trial date of February 9, 2009. Mr. Pistone entered his appearance on behalf of Defendant on January 23, 2009, at which time he made a demand for discovery and speedy trial. The State filed a stipulated Rule 5-604 petition on February 16, 2009, requesting that the trial be continued to September 2,

2009. As with previous requests for extensions, the parties stated that the case was complicated. The stipulated petition stated that an extension was necessary in part because Mr. Pistone had just opened the file and he had received approximately 800 pages of discovery, as well as the safehouse tape. Further, Mr. Pistone was out of state tending to his ill father who subsequently passed away. Services for Mr. Pistone's father were held on February 13, 2009.

{24}     On June 26, 2009, the assistant district attorney met in person with Mr. Pistone to discuss the case. At that time, Mr. Pistone requested a copy of the previous plea offer and the sex offender evaluation. In discussing the case, counsel raised concern regarding Defendant's competency based on information gleaned from the records. In particular, Defendant had a history as a victim, as well as a substance abuse problem, and other sexual issues, which counsel believed may have contributed to his situation. On June 29, 2009, the assistant district attorney sent Mr. Pistone the evaluation and plea offer letter. At a hearing on the question of Defendant's competence, the district court stated that it "considered information from both counsel and finds that there is evidence that [D]efendant may not be competent to proceed in this case." It then entered an order staying the proceedings on July 10, 2009.

{25}     About six months later, on January 4, 2010, Mr. Pistone moved to withdraw as counsel for Defendant. The unopposed motion stated that Defendant had filed a bar

14

complaint against Mr. Pistone, that he was filing his own motions, that he was not complying with defense counsel, and that the attorney-client relationship had deteriorated. At a hearing on the motion, Mr. Pistone further told the court that he and the assistant district attorney "had a couple of meetings" and that they had gone over the State's case and had a plan to go forward. The district court granted the motion to withdraw and advised Defendant that he was stuck with his next attorney whether he liked her or not. An order granting the withdrawal was entered on March 24, 2010, and Ms. Kerr entered her appearance on May 19, 2010.

{26} Defendant filed his motion to dismiss on speedy trial grounds due to ineffective assistance of counsel on October 18, 2010. In the motion, Defendant argued that his due process rights had been compromised by his court-appointed attorneys and requested an evidentiary hearing to determine whether he had received ineffective assistance of counsel. After a series of hearings on the motion, the district court entered its order of dismissal, finding that Mr. Pistone committed ineffective assistance of counsel in his representation of Defendant. The court based its finding on the fact that Mr. Pistone's motion to withdraw alleged that a disciplinary complaint had been filed against him by Defendant but that the disciplinary board did not have any complaints by Defendant against Mr. Pistone in its files. In addition, the court

found that Mr. Pistone had raised competency as a question prior to the July 2009 trial setting but that he never obtained a competency evaluation.

**{27}** We first address whether Mr. Pistone committed ineffective assistance of counsel and then turn to consider whether his representation of Defendant caused a speedy trial violation. There is a two-fold test for proving ineffective assistance of counsel: the defendant must show that (1) counsel's performance fell below that of a reasonably competent attorney, and (2) the defendant was prejudiced by the deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *Id.* We review counsel's performance in a "highly deferential" manner; "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984).

**{28}** As we have indicated, the district court found that Mr. Pistone committed ineffective assistance because the disciplinary board did not have any complaints against him by Defendant and because Mr. Pistone never obtained a competency evaluation. For the reasons that follow, we disagree that this conduct rises to a level of ineffective assistance of counsel.

**{29}** As an initial matter, we observe that, over the course of four hearings, the district court never took any meaningful testimony from Mr. Pistone regarding his representation of Defendant. Nevertheless, there is no dispute with the district court's finding that the disciplinary board did not have any complaints concerning Mr. Pistone from Defendant. Indeed, after the court devoted an entire hearing attempting to access Mr. Pistone's records from the disciplinary board without a signed waiver of confidentiality, Mr. Pistone ultimately signed that waiver and there was no record of a complaint. However, we are not persuaded that the mere fact that there was no complaint on file with the disciplinary board means that Mr. Pistone did not have reason to believe that Defendant was unhappy with his representation and that Defendant told Mr. Pistone that he had filed a disciplinary board complaint. We explain.

**{30}** At the evidentiary hearing, Defendant testified that, even though he had not met or spoken to Mr. Pistone, he did not feel like he could get along with Mr. Pistone because, he said, "[f]rom looking at his demeanor and his character and seeing him operate in action [with other clients] when I've been in court the few times I was, I felt like he was—he wouldn't be a good person in my defense." Defendant also testified that he filed a motion for substitute counsel and that Mr. Pistone was upset when he received the motion to have him replaced. Further, Defendant told the court that he

17

had filed a disciplinary complaint against Mr. Pistone "[a]round the middle or towards the end of 2009." The complaint alleged that Mr. Pistone, like Mr. Ross, was not communicating with Defendant or making any effort to discuss the case. As a final matter, Defendant acknowledged that he was present at the March 24, 2010 hearing concerning Mr. Pistone's motion to withdraw, and he knew at that time that the motion was based on the bar complaint Defendant had filed. Defendant testified that he expressed his displeasure at Mr. Pistone's representation at the hearing, yet he never advised the court that no complaint had been filed with the disciplinary board. Against these facts, regardless of whether a complaint was actually filed against Mr. Pistone with the disciplinary board, Defendant's own testimony indicates that Mr. Pistone believed such a complaint was filed, and he acted accordingly when he filed the motion to withdraw.

{31} We next address the district court's finding that Defendant received ineffective assistance of counsel because Mr. Pistone unnecessarily requested, yet never obtained, a competency evaluation. Approximately one month prior to the July 20, 2009 trial setting (which was subsequently extended by Supreme Court order to September 2, 2009), Mr. Pistone and the assistant district attorney met in person to discuss the need for such an evaluation. Given concerns about Defendant's sex abuse problems as a child and problems with substance abuse, the attorneys raised the issue of Defendant's

competency with the district court. After hearing from both counsel, the district court agreed that there was sufficient evidence that Defendant may not be competent to proceed and entered an order staying the proceedings. Although Defendant and his subsequent counsel, Ms. Kerr, believed Defendant was competent and an evaluation later established that he was in fact competent to proceed, we do not agree with the district court that from this, "the State can infer that [the motion] was filed for dilatory purposes." Further, without more, we will not second guess the tactics and strategies of Mr. Pistone in reviewing a claim of ineffective assistance of counsel. *Lytle v. Jordan*, 2001-NMSC-016, ¶ 26, 130 N.M. 198, 22 P.3d 666 (stating that a defendant cannot make a claim of ineffective assistance of counsel "if there is a plausible, rational strategy or tactic to explain the counsel's conduct" (internal quotation marks and citation omitted)); *Hester*, 1999-NMSC-020, ¶ 11 ("It is not the role of this Court on appeal to second guess trial tactics."). Defendant has failed to make a prima facie case of ineffective assistance of counsel on this issue. His case was complex and involved concerns about whether he had been abused as a child and about a history of drinking problems. To provide a comprehensive and effective defense, Mr. Pistone may have made a strategic decision to ensure that Defendant was competent to proceed to trial. This decision may have been especially true since both counsel and

the district court believed, at the relevant time, that a competency determination was necessary.

**{32}** With regard to the timing of the competency evaluation, because the district court did not hear from Mr. Pistone on the matter, we cannot say whether the five-month delay was intentional, or whether it was due to funding issues, transportation issues, or because Defendant had told Mr. Pistone he no longer wanted Mr. Pistone to represent him. We therefore conclude that Defendant has not established a prima facie case of ineffective assistance of counsel for any of the instances he has alleged. Our ruling does not foreclose Defendant from filing a habeas corpus petition to pursue his claim of ineffective assistance of counsel. *See State v. Herrera*, 2001-NMCA-073, ¶ 37, 131 N.M. 22, 33 P.3d 22 (noting preference of habeas corpus proceeding when the record on appeal does not establish prima facie case of ineffective assistance of counsel).

**{33}** Although we reverse the district court's finding that Mr. Pistone committed ineffective assistance of counsel, we next consider whether his representation of Defendant caused a speedy trial violation. Between January 23, 2009, and February 13, 2009, Mr. Pistone's father was terminally ill and passed away. After his return, Mr. Pistone met with the assistant district attorney well in advance of trial to discuss the case, including the need for a competency evaluation. He further requested a copy

20

of the previous plea offer and the letter regarding the sex offender evaluation. The district court entered an order staying the proceedings on July 10, 2010, pending a competency evaluation. Almost six months later, on January 4, 2010, Mr. Pistone filed a motion to withdraw. We attribute the delay to Defendant, who was again allowed to change counsel at a crucial time. *See State v. Mascarenas*, 1972-NMCA-106, ¶ 6, 84 N.M. 153, 500 P.2d 438 (recognizing that "where a defendant causes or contributes to the delay, or consents to the delay, he may not complain of a denial of the right" to a speedy trial). At the very least, this delay weighs slightly against Defendant.

**Liane Kerr**

{34}     Ms. Kerr entered her appearance on behalf of Defendant on May 19, 2010, and remained his counsel until the case was dismissed on July 20, 2011. The district court did not find Ms. Kerr to be responsible for any of the delay, and we agree. While it took an exceedingly long time from the filing of the motion to dismiss on October 18, 2010, until dismissal of the case in June 2011, none of that delay was intentional. Ms. Kerr requested one continuance when she was recovering from surgery, and the district court set four separate hearings on the motion, at the end of which it dismissed the case. As a general rule, judicial reassignments "fall[] within the administrative burdens on the criminal justice system," and delay resulting from judicial reassignments "is considered negligent delay and is weighed against the State

21

accordingly." *Garza*, 2009-NMSC-038, ¶ 29; *see Tortolito*, 1997-NMCA-128, ¶ 9 (noting that the court's extensive caseload and scheduling and backlog problems should be weighed against the prosecution). We consider the three-month delay from March to June 2011, caused by the district court's resetting of hearings on the motion to dismiss, as negligent delay that weighs against the State.

{35}     In finding that the length of delay resulted in a denial of due process, the district court stated that it was entering the order specifically relying on *Garza* and *Stock*. The court's reliance on *Stock* was misplaced. In that case, the district court had attributed over two-thirds of the three-and-one-half-year delay to "the nearly complete lack of attention to the case on the part of both the [s]tate and defense counsel." 2006-NMCA-140, ¶ 20. Notably, the district court had found that the public defenders were working under extreme and unworkable caseload levels and weighed the delay caused by the inactions of the public defenders against the State. *Id.* ¶¶ 8, 10, 26. And because the defendant had the intellectual capacity of a twelve-year-old, it was unclear whether he was capable of acquiescing to the delays. *Id.* ¶ 11. Lastly, because the defendant was not present at the hearings, he was never given a chance to express his frustration with the delays. *Id.* On appeal, we agreed with the district court's analysis. *Id.* ¶ 29. Acknowledging the general rule that a defendant is held accountable for the actions of his or her attorney, we nonetheless recognized that, in some cases, attorney neglect

22

could not be held against a defendant. *Id.* ¶¶ 21-22; *see Brillon*, 556 U.S. at 94 (recognizing an exception to the general rule that delay cause by assigned counsel is attributed to the defendant if the delay results in a "systemic breakdown in the public defender system" (internal quotation marks and citation omitted)). We concluded that *Stock* was such a case and agreed with the district court that the reasons for the delay must weigh against the prosecution. *Stock*, 2006-NMCA-140, ¶¶ 26, 29.

{36}     This case does not present the type of circumstances that existed in *Stock* to warrant the conclusion reached there. In this case, the district court found no fault with the State or that the delay was caused by the poor performance of any of Defendant's attorneys (with the exception of Mr. Pistone, which we have addressed above), or any institutional deficiencies of the public defender system. Instead, as we have discussed, the numerous continuances and extensions were either not objected to or stipulated to by Defendant, who was also responsible for changing counsel twice.

{37}     In addition, unlike *Stock*, in which the state facilitated the delay by doing "little or nothing to ascertain what was happening in the case or to move the case forward[,]" *id.* ¶ 25, here, the State conducted interviews, performed DNA testing, and was ready for trial by December 1, 2008, which was vacated so that Defendant could obtain new counsel. Also, unlike in *Stock*, Defendant in this case was fully capable of asserting his rights and considering and acquiescing to the actions of his appointed public

23

defender counsel. He made pro se pleadings, filed—or at least claimed to have filed—disciplinary complaints, and appeared in at least two hearings before the district court. Consequently, we conclude that *Stock* is inapplicable here and, instead, we apply the general rule "that a defendant must be held accountable for the actions of his or her attorneys[.]" *Id.* ¶ 22; *see Brillon*, 556 U.S. at 90-91.

{38}     In sum, we conclude that, of the nearly four-and-one-half-year delay, over one and one-half years of delay when Defendant was represented by Mr. Ross weighs heavily against Defendant because he consented to all of the extensions of time. One year of additional delay when Defendant was represented by Mr. Pistone also weighs heavily against Defendant because he caused the delay by trying to have Mr. Pistone removed from the case. The remaining delay when Ms. Kerr entered her appearance also weighs heavily against Defendant, although the last three months of administrative delay weighs against the State, but only slightly. Therefore, the second *Barker* factor weighs heavily against Defendant.

**Assertion of the Right**

{39}     "The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker*, 407 U.S. at 531-32.

Under the third *Barker* factor, we examine both the timing and the manner of the defendant's assertion of the speedy trial right. *Garza*, 2009-NMSC-038, ¶ 32. "An early assertion of the speedy trial right indicates the defendant's desire to have the charges resolved rather than gambling that the passage of time will operate to hinder prosecution." *Zurla v. State*, 1990-NMSC-011, ¶ 19, 109 N.M. 640, 789 P.2d 588, *modified on other grounds by Garza*, 2009-NMSC-038, ¶¶ 21-22. Conversely, "the closer to trial an assertion is made, the less weight it is given." *State v. Moreno*, 2010-NMCA-044, ¶ 33, 148 N.M. 253, 233 P.3d 782.

{40}     The timing of Defendant's assertion weighs against him. As a preliminary matter, we note that, although each of Defendant's three attorneys filed a pro forma demand for a speedy trial when they entered their respective appearances, those pro forma assertions carry no significant weight. *See State v. Valencia*, 2010-NMCA-005, ¶ 27, 147 N.M. 432, 224 P.3d 659. Defendant had the opportunity to assert his speedy trial right on many occasions in the years leading up to the filing of the motion to dismiss, yet he failed to do so until that motion was filed. Indeed, until the filing of the motion to dismiss, he either stipulated to, moved for, or failed to object to any of the State's requested continuances or extensions of time. Defendant also filed a pro se motion for appointment of substitute counsel in late October 2008, knowing that

his trial was scheduled for December 1, 2008, and that the State was prepared to proceed.

{41} In addition to acquiescing to the many continuances and extensions, Defendant was present at the December 1, 2008 hearing on his motion to appoint substitute counsel, yet failed to assert his speedy trial right at that time. In fact, the district court ordered that any delay caused by the change of counsel would be charged against Defendant for speedy trial purposes. Defendant was also present at the hearing on Mr. Pistone's motion to withdraw and, again, he made no speedy trial assertion. At the conclusion of that hearing, the district court warned Defendant that it was "not going to play this game with you, so that's the way it's going to be. Your next attorney, whether you like him or her, ain't gonna matter." Defendant simply did not assert his speedy trial right until the motion to dismiss was filed, and this essentially last-minute assertion does not support Defendant's claim that he meaningfully asserted his speedy trial right. *See Barker*, 407 U.S. at 534 (concluding there was no speedy trial violation where "[d]espite the fact that counsel had notice of the motions for continuances, the record shows no action . . . taken [for over three years] that could be construed as the assertion of the speedy trial right" (footnote omitted)).

{42} The district court similarly found that Defendant never asserted his right to a speedy trial to the State or the district court until the filing of the motion to dismiss on

26

October 18, 2010. The court's finding that Defendant "continually asserted his right to a speedy trial to his defense attorneys" came only from Defendant himself at the hearing on his motion to dismiss. We cannot say that this constituted an "early assertion" of the right when he had the opportunity—but failed—to assert the right for almost three and one-half years.

{43}     Moreover, the manner in which Defendant asserted his right weighs against him. We have said that when a defendant's assertion of the speedy trial right comes in the form of a motion to dismiss the indictment, we give little weight to the defendant's assertion of that right. *See, e.g.*, *Tortolito*, 1997-NMCA-128, ¶ 17 (concluding that the defendant's late assertion through a motion to dismiss did not weigh in his favor). Defendant asserted his right to a speedy trial in the form of a motion to dismiss due to ineffective assistance of counsel, without offering an alternative motion for immediate trial. This indicates that Defendant was seeking—and secured—the remedy of dismissal, but it does not indicate that he actually intended to assert his right to a speedy trial. Accordingly, we conclude that Defendant's assertion of the speedy trial right was neither timely nor forceful. The third *Barker* factor does not weigh in his favor.

**Prejudice**

{44} "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. In his motion to dismiss, Defendant argued that he had sufficiently advanced the assertion of the right to a speedy trial, that the length and reasons for the delay weighed against the State and, therefore, "prejudice need not be shown." He also claimed that the burden was on the State to show lack of prejudice. At the hearing on the motion on March 23, 2011, Defendant testified that he had been incarcerated since March 8, 2007, and was housed in protective custody where his mobility was limited. He also said that he had been beaten and harassed in jail.

{45} We analyze the remaining factor of prejudice to the accused in light of three interests: (1) preventing oppressive pre-trial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* A defendant is not required to make a particularized showing of prejudice where the other *Barker* factors weigh heavily in his favor. *Garza*, 2009-NMSC-038, ¶ 39. However, if the other three factors do not weigh heavily in defendant's favor, defendant bears the burden of demonstrating and substantiating prejudice. *State v. Maddox*, 2008-NMSC-062, ¶ 32, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038.

{46} In determining the significance of pre-trial incarceration, "the question is whether the length of time was unacceptably long." *State v. Laney*, 2003-NMCA-144,

¶ 29, 134 N.M. 648, 81 P.3d 591. Here, the length of Defendant's incarceration was considerable, particularly in light of the fact that he was in segregation the entire time. There is no dispute that Defendant was attacked twice by other inmates. Even assuming that being housed in segregation was oppressive, however, we note that Defendant was placed in protective custody for his own safety based on the charges against him and the fact that he is homosexual. Furthermore, the two attacks—one by the father of Victim in July 2007 and one more recently—were isolated incidents. Defendant received medical attention for the first attack and did not require any medical attention for the second attack. There is no indication in the record that Defendant feared for his safety or that there were repeated incidents indicating that he was involved in physical altercations.

{47}     We observe that the district court made no findings that Defendant suffered oppressive incarceration but found only that "[t]he fact that [Defendant] has been in custody in segregation for almost four and one-half . . . years with no adjudication, resulted in extreme prejudice." This was error. We agree that some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. However, *Garza* instructs that, while the length of pre-trial incarceration is relevant to the question of whether it should be deemed oppressive, a finding of oppressiveness also depends on "what prejudicial effects the defendant has shown as

29

a result of the incarceration." 2009-NMSC-038, ¶ 35. Defendant contends that, because he was in segregation, he "was not entitled to the same entertainment and recreation privileges that inmates in the general population received." We do not believe that this evidence supports a finding of an unusual degree of oppression and conclude that, while Defendant's pre-trial incarceration was undoubtedly lengthy, he has made no particularized showing to substantiate prejudice, particularly where the placement in segregation was for Defendant's own safety.

{48} We next examine any anxiety and concern that Defendant may have suffered as a result of being in jail and having charges pending against him for an extended period. Defendant does not appear to have specifically alleged that his pretrial incarceration caused any excessive anxiety or concern. Rather, Defendant argues for the first time on appeal only that "[t]here is a growing body of research on the psychologically damaging effect of isolation on a human being and a growing movement to remove most prisoners from such isolation[.]" However, Defendant points to no evidence of any sort establishing that he suffered any psychological damage as a result of his time in segregation. "[W]ithout a particularized showing of prejudice, we will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers." *Id.* We recognize that the length of Defendant's pretrial incarceration was unacceptably long. However, we

conclude that Defendant did not appear to suffer any undue anxiety and concern that should be weighed in his favor.

{49} Finally, we examine whether the delay impaired Defendant's ability to mount a defense. Of the three types of prejudice considered in the speedy trial analysis, this "third type . . . is the most serious." *Id.* ¶ 36 (internal quotation marks and citation omitted). As a result, the defendant must "state with particularity what exculpatory testimony would have been offered, and . . . present evidence that the delay caused the witness's unavailability." *Id.* (alteration, internal quotation marks, and citation omitted).

{50} Defendant has not shown any specific impairment of his defense. On appeal, he argues that "[w]hatever memory loss occurred in those four years [of delay] would result in the State's reliance on the safehouse interview, thus denying [Defendant] any meaningful ability to cross-examine [Victim]—or any other witness for that matter. Rather than benefitting [D]efendant, the loss of memory in this case would be detrimental to [Defendant] because of the recorded safehouse interview." As an initial matter, we note that Defendant does not point to any place in the record where this contention was raised below. In any event, we do not find this argument persuasive. *See In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice."). Defendant points to no

31

evidence that any witness, including Victim, had suffered memory loss, and the district court made no findings on this issue. Consequently, Defendant has not carried his burden regarding the third interest of our prejudice analysis.

{51} In sum, we hold that the prejudice factor does not weigh in Defendant's favor. Although he suffered a lengthy pre-trial incarceration, Defendant's assertions of prejudice are only mildly persuasive. Second, he did not demonstrate that the incarceration was the cause of excessive anxiety or concern. Lastly, Defendant has shown no prejudice to his defense.

**Balancing the Factors**

{52} Although Defendant's four-and-one-half-year pre-trial delay was presumptively prejudicial, upon balancing the other *Barker* factors, we hold there was no constitutional violation. We are mindful of the importance of Defendant's right to a speedy trial, yet in this case, none of the four factors weigh in Defendant's favor under our analysis. Defendant agreed to the many extensions, twice sought to have his counsel replaced, and did not assert his speedy trial right until the evidentiary hearing on the motion to dismiss. Additionally, Defendant failed to show that he was prejudiced by the delay. Viewing the circumstances in their entirety and weighing factors against Defendant, we conclude that, although Defendant was incarcerated for a long period of time, his constitutional right to a speedy trial was not violated. We

therefore reverse the district court's grant of his motion to dismiss on the grounds of ineffective assistance of counsel.

**The Dissent's View**

{53}     We briefly address the arguments asserted in the dissent. The dissent does not take issue with the district court's finding that the State was not at fault in this case. Instead, it primarily contends that Mr. Ross's negligent representation of Defendant and Mr. Pistone's ineffective assistance of counsel in his representation of Defendant resulted in the delay and that therefore the reasons for delay should not weigh against Defendant. The dissent also maintains that Defendant's incarceration was oppressive, his defense was impaired, and because Defendant did not know he had a right to a speedy trial, he could not assert the right.

{54}     Our difficulty with the dissent's contentions concerning the reason for delay is threefold. First, the dissent appears to disregard the totality of the evidence in the record. Instead, the dissent's position is based almost entirely on Defendant's testimony at the hearing on the motion to dismiss, which it seemingly adopts on appeal as factual and credible. In our view, this weighing of the evidence and, in particular, relying fully on Defendant's testimony, is not this Court's role on appeal, particularly when the district court made no specific findings based on his testimony.

33

{55}    Second, even though the district court did not find ineffective assistance of counsel as to Mr. Ross, the dissent nevertheless appears to find as fact that Mr. Ross's "negligent representation" contributed to the delay, again, based solely on Defendant's testimony. As an initial matter, we note that the dissent acknowledges that neither Mr. Ross nor Mr. Pistone testified or provided any evidence concerning their representation of Defendant. This alone raises a substantial question as to whether Defendant was denied adequate representation. In any event, we are unaware of any authority—and the dissent points to none—that recognizes a claim of "negligent representation" or how such a claim could result in a speedy trial violation.

{56}    Third, again relying solely on Defendant's testimony when he was seeking dismissal of his case, the dissent concludes that Mr. Pistone not only committed ineffective assistance of counsel, but that he made inaccurate representations and was inattentive to the progress of the case. We do not believe that Defendant's testimony, without more, establishes that Mr. Pistone's performance was deficient. And we are not willing to make the unsupported inference that, because the psychologist who ultimately conducted the competency evaluation was never contacted by Mr. Pistone, he did nothing. Although we agree with the dissent that the length of Defendant's incarceration in this case was troublesome, we do not believe that it is logical or legally sound to dismiss with prejudice every case in which this Court finds that a

34

defendant was "not getting the benefit of his court appointed counsels' professional attention."

{57} We also cannot agree with the reasoning of the dissent with regard to oppression, impairment of the defense, and assertion of the right. The dissent's statement that the length of Defendant's pretrial incarceration by itself was oppressive and caused Defendant anxiety and concern is unsupported in the record, and the district court made no findings in this regard. Further, according to the dissent, Defendant's defense was impaired because the potential for the alleged victim to experience memory loss was considerable. Again, there is no support for this proposition in the record. Lastly, as to the assertion of the right, we do not believe that Defendant did not know he had a right to a speedy trial. Indeed, the dissent's reliance on Defendant's testimony to that effect is contradicted by his testimony at the same hearing that he repeatedly told his attorney that he wanted to go to trial. As a final matter, the dissent appears to require evidence that a defendant possessed the legal skill and knowledge that he had a right to a speedy trial before a court can conclude that he failed to assert the right. This is a proposition for which we find no support, and we decline to create such a standard here.

**CONCLUSION**

{58} For the reasons set forth above, we reverse and remand for further proceedings.

35

{59}     **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**I CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

**M. MONICA ZAMORA, Judge (dissenting)**

**ZAMORA, Judge (dissenting).**

{60}     This is an unfortunate case where Defendant's fundamental right to a speedy trial was disrupted by his fundamental right to counsel. The very people that were charged with providing legal representation to Defendant and protecting his constitutional rights have in fact violated those rights during the pendency of these proceedings. *See Gideon v. Wainwright*, 372 U.S. 335, 345 (1963) (stating that the defendant "requires the guiding hand of counsel at every step in the proceedings against him" (internal quotation marks and citation omitted)). Because I find that Defendant and his case were not getting the benefit of his court appointed counsels' professional attention, as required, such negligence and disregard was the cause of the

36

excessive delay that violated Defendant's right to a speedy trial. I would affirm the district court's order granting Defendant's motion to dismiss, with prejudice.

**BACKGROUND**

{61}    In addition to those facts set forth by the majority, the district court took testimony on Defendant's motion to dismiss at two hearings, heard argument from counsel at a third hearing, and announced its decision at a fourth hearing. These matters will be incorporated into the discussion. Neither Ross nor Pistone testified at any time during those proceedings.

**STANDARD OF REVIEW**

{62}    "In considering each of the [*Barker*] factors, we defer to the district court's factual findings but review de novo the question of whether [the d]efendant's constitutional right to a speedy trial was violated." *State v. Montoya*, 2011-NMCA-074, ¶ 9, 150 N.M. 415, 259 P.3d 820. While we are deferential to the district court's factual findings, we independently examine the record to determine whether a speedy trial violation has taken place. *State v. Parrish*, 2011-NMCA-033, ¶ 10, 149 N.M. 506, 252 P.3d 730. Our examination of the record should be from the time Defendant was arrested to the entry of the district court's order of dismissal.

{63} The speedy trial analysis is not "mechanical" and must take into account all the relevant circumstances. *State v. Lujan*, 2003-NMCA-087, ¶ 29, 134 N.M. 24, 71 P.3d 1286. The district court was correct in its application of *Stock*. The issue before the *Stock* Court was whether that defendant's constitutional right to speedy trial was violated when he was incarcerated and awaiting trial for over three years and the delay was, in part attributable to the neglect of his public defender. 2006-NMCA-140, ¶¶ 1, 24, 29. The issue before this Court is whether Defendant's constitutional right to a speedy trial is violated when he is incarcerated and awaiting trial for over fifty-one months, and the delay is attributable to the neglect and ineffective assistance of his court-appointed attorneys.

{64} The comparable issue of negligence of the public defender is the common thread between these two cases. While the *Stock* Court noted that "under the egregious facts of this particular case," the defendant's speedy trial rights were violated, the facts in this case are analogous. *Id.* ¶ 1. Taking into account all relevant circumstances in this case, the delay cannot be attributable to the State or to Defendant. The delay, however, can be primarily attributed to both defense counsel. Defendant filed a motion to dismiss for a violation of his right to a speedy trial, whereby the delay was based on ineffective assistance of counsel, through no fault of the State or Defendant himself, but rather the delays caused by defense counsel.

**Presumptively Prejudicial Delay and Length of Delay**

{65}     The majority absorbs the length of delay analysis into the presumptively prejudicial delay analysis, almost without distinction. These are two separate discussions. It is agreed that the time line in this case is presumptively prejudicial and triggers the *Barker* factors. "In determining the weight to be given to the length of the delay, we consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Stock*, 2006-NMCA-140, ¶ 13 (internal quotation marks and citation omitted). The greater the delay, the more heavily it will potentially weigh in the defendant's favor. *See Garza*, 2009-NMSC-038, ¶ 24. In this case, the overall delay goes thirty-three months beyond the eighteen-month minimum.

{66}     The State concedes that the delay in this case was unusually long and weighs in Defendant's favor. The district court was correct in concluding that a delay of thirty-three months beyond the presumptively prejudicial benchmark was excessive. Accordingly, this factor should have weighed heavily in Defendant's favor. *See State v. Fierro*, 2012-NMCA-054, ¶ 36, 278 P.3d 541, *cert. denied*, 2012-NMCERT-004, 293 P.3d 886 (holding a delay of almost forty months beyond the bare minimum weighed heavily in the defendant's favor); *see also Johnson*, 2007-NMCA-107, ¶ 8 (holding that a total delay of twenty-six months in a complicated case, eleven months

39

over the bare minimum, weighed in the defendant's favor); *State v. Talamante*, 2003-NMCA-135, ¶¶ 1, 11, 134 N.M. 539, 80 P.3d 476 (holding that a delay of thirty-one months in an intermediate or complex case weighed heavily in the defendant's favor).

**Reason for Delay**

{67} The very heart of Defendant's motion to dismiss is whether defense counsel was responsible for any delays, and if so, whether any delay in this case can be attributable to any such ineffective or negligent representation sufficient to violate Defendant's right to a speedy trial. While the district court only found that Pistone had committed ineffective assistance of counsel, it nonetheless attributed the delays in the case to both defense counsel. "The general rule attributing to the defendant delay caused by assigned counsel is not absolute." *Brillon*, 556 U.S. at 94. " '[A]ny inquiry into a speedy trial claim necessitates a functional analysis of the right in the particular context of the case[.]' " *Id.* (quoting *Barker*, 407 U.S. at 522).

**Ineffective Assistance of Counsel**

{68} The constitutional right to counsel protects a defendant's right to "reasonably effective assistance." *Strickland*, 466 U.S. at 687. "The standard of review for claims of ineffective assistance of counsel is de novo." *State v. Boergadine*, 2005-NMCA-028, ¶ 33, 137 N.M. 92, 107 P.3d 532. The defendant has the burden of demonstrating that (1) counsel's performance was deficient in that it fell below an objective standard

40

of reasonableness, and (2) that the defendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Lytle*, 2001-NMSC-016, ¶¶ 26-27. A defendant cannot make a claim for ineffective assistance of counsel "if there is a plausible, rational strategy or tactic to explain the counsel's conduct." *Id.* ¶ 26 (internal quotation marks and citation omitted). Otherwise, we will not second guess counsel's trial strategy. *Id.* ¶ 43. Accordingly, we should be examining whether the time frame of this case would have been different had each defense counsel given this criminal proceeding the professional attention it needed to move it forward to a resolution.

{69}     In the district court's order of dismissal, it found "[D]efendant's own prior counsel *are* responsible for the delay in this case." The Court found that Mr. Ross, while not ineffective, was still responsible for not moving the case along. Mr. Ross's saving grace, as far as the district court was concerned, was the witness interviews he conducted and his consideration of a sex offender evaluation. The district court found ineffective assistance of counsel as to Mr. Pistone. At the hearing on Defendant's motion to dismiss, the court also commented that "if [the district court] knew then what [it] know[s] now, [the district court] would have never allowed . . . Pistone to withdraw[.]"

41

**{70}** In reviewing whether there was ineffective assistance of counsel as to either Ross or Pistone, it is important to keep in mind that since March 8, 2007 through June 23, 2011, Defendant was placed in the segregation unit at Metropolitan Detention Center (MDC). For over fifty-one months, he was allowed out of his cell for twenty minutes in the morning and twenty minutes in the evening. He had no other privileges that would allow him time out of his cell otherwise. Whatever Defendant needed to do had to be done within that total 40 minute a day time frame, whether it was taking a shower or attempting to contact his attorneys. Defendant even had his mother trying to get in touch with attorneys because he could not make contact with them in that allotted time.

**Houston Ross**

**{71}** The majority concluded Defendant was responsible for the delays in bringing his case to trial during the time Ross represented him by either not objecting to or by stipulating to the six-month extensions which ultimately lead to a trial date in December 2008. A waiver of a constitutional right is defined as an "intentional relinquishment or abandonment of a known right or privilege." *Barker*, 407 U.S. at 525 (internal quotation marks and citation omitted). "Courts should indulge every reasonable presumption against waiver[.]" *Id.* (internal quotation marks and citation omitted). Waiver cannot be presumed from a silent record but must be demonstrated

on the record or with evidence to show that the defendant intelligently and knowingly waived his right. "Anything less is not waiver." *Id.* at 526 (internal quotation marks and citation omitted).

{72} The gist of Ross's nineteen-month representation became quite apparent at the March 23, 2011 hearing on Defendant's motion to dismiss. Ross, allegedly on behalf of Defendant, stipulated to most of the six-month rule extensions as well as a few continuances. During this time, Defendant left telephone messages for Ross that he wanted to go to trial and did not want to plea. As a result of his actions, Ross led the State and the court to believe Defendant would be entering a plea by requesting a sex offender evaluation for purposes of negotiating a plea and plea settings.

{73} It is clear that Ross entertained plea negotiations without discussing the merits and defense of the case with his client and before interviewing witnesses that had been identified by the State. Perhaps, if Ross had explained to Defendant why he was insisting on pursuing plea negotiations and in turn listened to his client to find out why Defendant was insisting on proceeding to trial, some of the delay could have been avoided. Ross never shared the State's letter concerning the plea offer with Defendant. Defendant tried to confer with counsel, but Ross was focused on a plea. The only times Defendant actually spoke with Ross were the one time Ross came to MDC and the two to three times when Defendant was transported to court. Each time Defendant

43

went to court and spoke with Ross, he let him know he just wanted to go to trial, no matter what plea was offered. The State acknowledged that it became pretty clear that Defendant was not going to enter into a plea at the October 14, 2008 plea setting. That was the first time she heard that a plea was not an option in the case. Additionally, though Ross suggested a sex offender evaluation would assist with the plea negotiations, there is nothing in the record about what action he took, if any, in investigating such an evaluation. Ross never discussed a sex offender evaluation with Defendant nor was Defendant ever transported to participate in a sex offender evaluation.

{74}    The majority points out that at the December 1, 2008 hearing on Defendant's pro se motion for appointment of substitute counsel, the district court noted there was no indication that Ross had not fully and effectively represented Defendant. The majority notes that Defendant filed his motion at a crucial time suggesting that Defendant had the aptitude to navigate such a delay tactic. Defendant testified that he filed the motion for substitution of counsel on October 23, 2008, because Ross only wanted him to plea and Defendant wanted to go to trial. Defendant felt he and Ross were on good terms, but Defendant was concerned about the quality of representation at trial. Defendant also did not have faith that Ross was going to give the trial his full effort. It was not until November 24, 2008, one week before the December 1, 2008

44

trial setting, that Ross conducted some witness interviews. A defendant should not be put in a position to have to choose between proceeding with his criminal trial with inadequately prepared legal counsel and the possibility of waiving his right to a speedy trial by filing a pro se motion to have his ill-prepared legal counsel removed from his case. *See United States v. Moya-Gomez*, 860 F.2d 706, 739 (7th Cir. 1988) (noting that a criminal defendant may be asked to choose between waiving a constitutional right for another course of action, so long as the choice presented to him is not constitutionally offensive); *see also Frankel v. Woodrough*, 7 F.2d 796, 798 (8th Cir. 1925) ("Speed in trying accused persons is not of itself a primal and separate consideration. Justice, both to the accused and to the public, is the prime consideration. Such speed is merely an important element or attribute of justice. If either party is forced to trial without a fair opportunity for preparation, justice is sacrificed to speed. But when both parties have had fair opportunity for preparation, then either has a legal right to demand a trial as soon as the orderly conduct of the business of the court will permit.").

{75}     While Ross may not have completely crossed over the threshold into the area of ineffective assistance of counsel, his negligent representation certainly contributed to the delay in bringing Defendant to trial.

**Scott Pistone**

{76} Pistone filed his motion to withdraw on the grounds that Defendant filed a bar complaint, Defendant was filing his own motions, Defendant was not complying with Pistone, and that the attorney-client relationship had deteriorated. At the March 24, 2011 hearing, Defendant testified that he thought he had filed a motion for another substitution of counsel. He sent Pistone a copy and he knows Pistone received a copy because Pistone was upset about it. Defendant further testified that he did not file any other pleadings with the court. Actually, a review of the record does not show that any pro se pleadings, including this motion for substitution of counsel, were filed during the fourteen months Pistone was assigned to the case.

{77} The majority proposed that it was up to Defendant to advise the court that no complaint had been filed with the disciplinary board. However, as far as Defendant was concerned, he filed a disciplinary complaint against Pistone because Pistone, like Ross, was not communicating with him and Defendant was concerned about the amount of time that had passed. A determination of why the complaint never made it to the disciplinary board would be pure speculation.

{78} There was never any contact whatsoever between Pistone and Defendant during that fourteen-month time frame. The first time Defendant met Pistone was at the March 24, 2010 hearing on Pistone's motion to withdraw. Any attempts at contact were made by Defendant. He found out through his MDC caseworker that Pistone had

46

been appointed to represent him. Defendant looked up Pistone's phone number in the yellow pages and tried to call him multiple times. Defendant spoke with Pistone's office and asked about discovery, which they did not have, and he was informed that the State had requested a competency evaluation, though it was never explained why. On February 16, 2009, a stipulated six-month extension was filed. Defendant was never contacted about this extension even to tell him that his newly appointed counsel's father had passed. Defendant found out about the extensions through his case worker at MDC.

{79} It is important to clarify that it was the State that contacted Pistone on June 1, 2009 to discuss the status of the case. At their meeting on June 26, 2009, it was the State that brought up the concern about Defendant's competency given his background and the prosecutor's experience in these types of cases. Pistone also indicated to the State that he did not think he would be ready for the July 20, 2009 trial. They agreed that the proceedings should be stayed pending a competency evaluation. It was the State that prepared and filed the order staying proceedings pending the determination of competency. The competency issue was not raised at a hearing and Defendant was not made of aware of the order or that his trial had been continued as a result. Dr. Maxann Shwartz is a licensed psychologist who had a contract with the district court to conduct competency evaluations. She never received

47

a request to conduct such an evaluation from Pistone nor did she ever speak with him about a competency evaluation for his client. In August 2010, Dr. Shwartz received a request from Defendant's third attorney, Liane Kerr, to conduct an evaluation. A competency evaluation was completed on Defendant and he was cooperative through the process. Defendant was found competent. An order lifting the stay was entered on October 18, 2010.

**{80}** The record is void of what Pistone did or did not investigate and any resulting plausible or rational strategic choices. The records shows that he filed an entry of appearance, demand for discovery and speedy trial; stipulated to a six-month rule extension; received discovery from the State; met with the State once; approved an order prepared by the State staying the proceedings pending a determination of his client's competency; was not ready for trial in July 2009; and met his client for the first time at the hearing on his motion to withdraw as counsel. His strategic choices are difficult to readily identify. *State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 (finding that the presumption of effective assistance will remain intact as long as there is a reasonable trial tactic explaining counsel's performance); *Strickland*, 466 U.S. at 690 (noting "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"). Pistone's performance was deficient, and there is a reasonable probability that Defendant's case

could have proceeded to trial within the fourteen- month time frame in which Pistone represented Defendant. Defendant has been deprived of the right to effective legal counsel in this case.

{81} "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled." *Strickland*, 466 U.S. at 685 (internal quotation marks and citation omitted). Defense counsel's legal representation fell below an objective standard of reasonableness, and this should have weighed heavily in favor of Defendant. I would affirm the district court's order finding that Pistone committed ineffective assistance of counsel to Defendant.

{82} It is the inactions, misrepresentations of defense counsel, and their lack of communication with their client that raise my concerns. The State and the district court relied on Defense counsels' representations that Defendant was interested in plea negotiations, that a sex offender evaluation would be helpful with the plea negotiations, and that Defendant was perhaps incompetent. The district court cited to *Stock*, and commented that "the State [has] to work both sides of the street sometimes." While I agree with *Stock* and the district court in this particular case, I am

not sure how much more the State could have done, short of representing both sides of the case.

**{83}** The case did not move to trial because of these inaccurate representations, inattention to the progress of the case, and resulting delays. This was contrary to Defendant's desire to go to trial, and more importantly, contrary to his fundamental right to a speedy trial. Even though the district court found both of Defendant's attorneys responsible for the delay, the majority assigns delay to Defendant. This assignment is a factual issue that should not be disturbed on appeal if there is absolutely no evidence to support it. *See State v. Collier*, 2013-NMSC-015, ¶ 41, 301 P.3d 370 ("Ruling on a speedy trial motion requires a court to weigh factually based factors, and [f]act-finding is a function of the district court." (internal quotation marks and citation omitted)). I agree with the district court that both defense counsel are responsible for the over fifty-one month delay.

**Prejudice**, **Oppressive Pretrial Delay and Anxiety and Concern of Defendant**

**{84}** The principal goal of the speedy trial right is preventing prejudice to the accused. *Garza*, 2009-NMSC-038, ¶ 12. "Prejudice should be evaluated in light of the interest of the defendant, which the right was designed to protect." *State v. O'Neal*, 2009-NMCA-020, ¶ 27, 145 N.M. 604, 203 P.3d 135. A lengthy pretrial delay can prejudice the defendant, and the prejudice increases over time. *Stock*, 2006-NMCA-

140, ¶ 17. The question then becomes "whether the length of time was unacceptably long in that it became unduly prejudicial so as to factor into the analysis." *Laney*, 2003-NMCA-144, ¶ 29.

{85} The majority holds that it was error for the district court to hold that four and one-half years resulted in extreme prejudice, without making any findings. "The oppressive nature of the pretrial incarceration depends on the length of incarceration[.]" *Garza*, 2009-NMSC-038, ¶ 35. The *Stock* Court, with that defendant facing similar charges, did not have a problem finding that three and one-half years in jail was unacceptably long and therefore oppressive. 2006-NMCA-140, ¶ 35.

{80} The majority also points out that, assuming segregation was oppressive, it was for Defendant's own good, and that he did not meet his burden of showing any undue prejudicial effects as a result. Moreover, the majority suggests that Defendant needed to present expert testimony to prove a particularized showing of prejudice. Common sense would dictate that twenty-three hours and twenty minutes a day, in one room, alone, ostracized by other inmates and MDC staff because of his charges, without any communication with his legal counsel, much less anyone else, about the status of his criminal case or about anything else, goes beyond oppressiveness, anxiety, and concern.

{86}   We have recognized that "some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial[, t]herefore, we weigh this factor in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue." *Garza*, 2009-NMSC-038, ¶ 35 (alterations, internal quotation marks, and citation omitted). Accordingly, "[i]n determining the significance of pretrial incarceration, the question is whether the length of time was unacceptably long." *Stock*, 2006-NMCA-140, ¶ 35 (internal quotation marks and citation omitted).

{82}   The majority's refusal to weigh the prejudicial prong in Defendant's favor, based on the exceedingly long incarceration, is contrary to established precedent. Here, over fifty-one months in pretrial incarceration, essentially with little to no legal counsel, is oppressive and undue and caused Defendant anxiety and concern. *See id.* (holding that pretrial incarceration period of three and one-half years was unacceptable and oppressive).

**Impairment of Defense**

{87}   *Barker* noted that the most serious interest is the possibility that the defense would be impaired. 407 U.S. at 532. "[T]he inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.* Although the majority argues that Defendant did not show any specific impairment to his defense, Defendant's lack of any interaction with his attorneys was the greatest impairment to

52

his defense. "[I]f a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious." *Id.* at 533 (footnote omitted).

{88}    Defense counsel never conducted an interview with the alleged victim, who was four years old when Defendant was arrested. At the time Defendant's motion to dismiss was filed, the child would have been approximately eight years old. Though general allegations regarding potential memory loss are typically too speculative to show actual prejudice, an allegation regarding the memory of a child demonstrates enough specificity to show prejudice because "the memory of a child victim is particularly susceptible to the passage of time." *Stock*, 2006-NMCA-140, ¶ 42.

{89}    The potential for the alleged victim to experience memory loss that would impair the defense is considerable and demonstrates cognizable prejudice. This should weigh moderately in Defendant's favor.

**Assertion of the Right**

{90}    This case presents that situation where the district court, after having heard the testimony in Defendant's motion to dismiss hearing, could distinguish where defense counsel acquiesced in long delays without adequately informing their client from the situation where a defendant knowingly fails to object to the delays. *Id.* ¶ 31. The

53

majority asserts that Defendant had the opportunity to assert his speedy trial right on many occasions in the years leading up to the filing of the motion to dismiss, yet he failed to do so until he filed his motion to dismiss. There was no evidence presented to show that Defendant had both the legal skill and knowledge to recognize that he had a Sixth Amendment right to a speedy trial, that his court appointed counsel's negligence and ineffective assistance in providing adequate representation was a violation of the due process clause within the meaning of the Fourteenth Amendment, and that it was up to Defendant to bring this all to the court's and the State's attention. Such a position is at odds with *Gideon* and only serves to revert us back to *Betts v. Brady*, 316 U.S. 455, 471 (1942). *See id.* (holding that the Fourteenth Amendment provides no universal requirement of the appointment of legal counsel in a state criminal trial).

{91} Defendant testified that he did not know that he had a right to a speedy trial, nor had his attorneys informed of his right. "We also analyze the defendant's actions with regard to the delay." *Garza*, 2009-NMSC-038, ¶ 32. It is necessary "to closely analyze the circumstances of each case." *Id.* ¶ 33. For example, a court should assign a "different weight to a situation in which the defendant knowingly fails to object from a situation in which his attorney acquiesces in long delay without adequately informing his client[.]" *Barker*, 407 U.S. at 529.

54

{92} While Defendant did not know about his right to a speedy trial, he was consistent in expressing his desire to go to trial. The problem was with the lack of communication with both of his court-appointed counsel, despite his effort to contact them. He asserted his right the only way he knew how, given his limitations in the segregation unit, by filing a motion for appointment of new counsel and the disciplinary actions. He filed his pro se motion and disciplinary action because Ross was pushing a plea and Defendant wanted to go to trial. Defendant was also concerned about the quality of Ross's representation at trial. So while his assertion of his right may not have been to the court, it was to his attorney. Defendant had no communication with Pistone in the entire fourteen months of Pistone's assignment to his case. So Defendant did what he could, he prepared the motion for substitution of counsel, served it on Pistone, and prepared a disciplinary action, though neither document was found to have been filed. Nonetheless, these actions finally got Pistone's attention to do something, even if it was a motion to withdraw his representation of Defendant.

**Balancing Factors**

{93} As in *Stock*, it is difficult to attribute the lengthy delays to the defendant, where the majority of the delay was caused by his legal counsel and those delays could not be said to have been for his benefit. 2006-NMCA-140, ¶ 21. As we predicted in *State*

55

*v. Plouse*, 2003-NMCA-048, ¶¶ 46-47, 133 N.M. 495, 64 P.3d 522, there could be a case where delays caused by the neglect of court-appointed counsel could not be held against the defendant for speedy trial purposes as in *Stock*; this is just that case. The *Garza* Court specifically held "if the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." 2009-NMSC-038, ¶ 39.

{94} The approximate thirty-three month delay beyond the presumptively prejudicial period of eighteen months, during which Defendant was incarcerated and in protective custody, is compelling and weighs heavily in Defendant's favor. Defendant asserted his right and did not intelligently and knowingly waive his right to a speedy trial, and this should weigh heavily in his favor. The State and the district court relied on defense counsels' representations that Defendant was interested in plea negotiations, that a sex offender evaluation could be helpful in plea negotiations, and that Defendant was perhaps incompetent. The case did not move to trial because of these inaccurate representations and resulting delays. This was contrary to Defendant's desire to go to trial. Because the reasons for the delay were all attributable to the defense counsel, not to the State or to Defendant, this factor should have weighed heavily in Defendant's favor.

{95}    The ineffective assistance and negligence of defense counsel, the resulting delay, and the consequential placement in the segregation unit or protective custody was oppressively prejudicial, caused the defendant anxiety and concern, and impacted his defense.

{96}    Dismissal of these very serious charges is drastic, but it is the only constitutionally responsible remedy under the facts of this case. Accordingly, I respectfully dissent, and the district court's order granting Defendant's motion to dismiss with prejudice should be affirmed.

_____
**M. MONICA ZAMORA, Judge**